[Crim. No. 15540. In Bank. July 7, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME SHARP, Defendant and Appellant.

## COUNSEL

Jerome Sharp, in pro. per., and Richard H. Levin, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, Robert F. Katz and Ellen B. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Jerome Sharp was charged with a violation of Penal Code section 487, subdivision 1 (grand theft of personal property having a value in excess of $200). He and his court-appointed counsel waived trial by jury, and defendant was found guilty as charged and sentenced to prison. He appeals from the judgment of conviction. His principal contention is that the trial court committed prejudicial error in denying to defendant a constitutional right to represent himself at trial. We hold that there is no constitutional right to proceed pro se at trial and affirm the judgment.

Helen Zastrow owned two rings, each set with a diamond. One diamond had a value not less than $700, and the other a value not less than $200. Defendant, who was acquainted with Mrs. Zastrow, persuaded her to let him take possession of the rings on the pretext that he would have them cleaned by a jeweler friend at no cost. When he returned the rings the following evening Mrs. Zastrow noticed a difference in the appearance of the larger stone. She eventually had the rings appraised and discovered that they were no longer set with diamonds but rather with white spinels, which stones were "as cheap as glass."

After defendant was arrested and fully advised as to his constitutional rights, he stated to investigating officers that he knew nothing "about the diamond rings." He thereafter conceded that Mrs. Zastrow had delivered the rings to him and that he had personally cleaned the diamonds, but he denied he had told Mrs. Zastrow that he intended to take them to a jeweler friend. He testified at trial, however, that he told Mrs. Zastrow he would arrange to have the rings cleaned by a friend; that he gave the rings to his former fiancee for the purpose of having them cleaned; that when she returned the rings to him the following day he promptly delivered them to Mrs. Zastrow, and that he did not tell the investigating officers his former fiancee had taken possession of the rings as he wished to protect her.

Defendant contends, inter alia, that the evidence is insufficient to sustain his conviction. However, the court as trier of fact was persuaded to the contrary and, on the record presented, it cannot be said that " 'upon no hypothesis whatever is there sufficient substantial evidence to support' " the court's conclusion. (*People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778].) We conclude, accordingly, that the judgment of conviction cannot be challenged for insufficiency of the evidence.

Defendant also contends that the trial court erred prejudicially in refus-

ing to permit him to represent himself at trial. It appears that on the day of the trial the deputy public defender who then represented defendant advised the court of defendant's desire to represent himself. The court made an inquiry which disclosed that defendant was 48 years of age with an eleventh-grade education. Defendant also claimed to have "some knowledge of the law."[1] When asked what the legal defenses to grand theft were, he responded that he had "overwhelming evidence to show I am not guilty. That's all I need. . . . I know the facts better than anyone else." It further appeared that defendant was aware petty theft was a lesser offense included in the charge of grand theft; that he wished to make some pretrial motion as to "certain facts that I don't believe should be heard in open court"; that he believed he "could make an opening statement that the court could recognize from a layman such as I am"; that he believed he could cross-examine witnesses and "In fact, I have got briefs already made out to the witnesses that are involved in the case"; that he "really did not intend to subpoena any witnesses to the court because I don't think I needed any because of the evidence I have on hand"; and that if any witnesses "made a statement that is out of order, I believe I can object."[2]

During the course of the inquiry by the court defendant stated that he wished to explain, at the appropriate time, a "lie" he told to an investigating officer. The public defender admonished defendant not to discuss his defenses at that time. However, defendant insisted that "I did lie to the detective. I am trying to be fair to the court and to myself. I am being honest."

In response to the court's advice that an attorney could better present all the evidence and defenses which defendant stated he hoped to present, defendant responded, "I realize an attorney really has more on the ball than I do. I will grant you that, your Honor; but there are certain questions that I am afraid that he might not ask certain witnesses that are very

---

[1]Defendant stated: "I do have some knowledge of law. I have read many petitions and law books and so forth. I might not know the actual numbers and codes of the California law books, but I understand what I am doing; believe me, I do."

[2]The foregoing showing of defendant's skills and abilities amounts to little more than bare claims. He claimed general "knowledge of the law" based on reading "petitions and law books" without demonstrating specific or particular knowledge; when asked for the legal defenses to grand theft he stated only that he knew facts which would show he was not guilty; he indicated that he intended to move to exclude "facts" which he thought should not "be heard in open court" without suggesting that he had knowledge of general grounds upon which testimony might be excluded or the particular grounds upon which he intended to rely to exclude particular "facts"; he thought he could make an opening statement, cross-examine witnesses, and could object to a witness' statement without noting that objections should generally be directed to counsel's inquiries. In short, defendant's showing consisted, in the main, of a self-serving opinion that he could adequately represent himself.

potent, important, in regard to the case itself. What I would like to do is have an attorney sit by me and give me a little advice, if it is possible, in regard to certain questions that I may ask. . . ." When defendant stated that an attorney could be "positively" helpful to him, and that defendant had never before represented himself, the court denied defendant's motion to appear in propria persona.

The right to appear pro se in a criminal trial has presented increasingly difficult problems for the courts. Its correlative right, the constitutional right to representation by an attorney in a criminal trial, has, in recent years, been subjected to closer scrutiny and the limits of that right have now been well defined by judicial pronouncements. The difficulties experienced in defining the limits of the right of self-representation are due in large part to the absence of language or clear inference in either the federal or state Constitution according to that right constitutional stature. Reliance is nevertheless placed upon language which grants the right to appear and defend with counsel as also constituting a grant of the opposite of that right, that is, the right to appear and defend without counsel. We conclude, for the reasons hereinafter appearing, that neither the federal nor the California Constitution confers such a right.

■ There can be no denial that, traditionally, a person accused of wrong-doing was and is entitled to defend against such charges, and that the right to so defend is a necessary element of those fundamental rights which are included within concepts of due process and a fair trial. The issue presented, however, is a narrower one. Although the right to defend is fundamental, our concern is with the manner in which that fundamental right is to be exercised. We are also concerned with the corollary issue of whether a particular manner of exercising the right is itself so fundamental as to require unconditional protection.

In England in precolonial times an accused was as a practical matter, required personally to present his defense if any was to be offered.[3] Later he was entitled to representation by counsel in all cases except those involving treason, but counsel's functions were limited. The right to put on a full defense through counsel, whatever the nature of the charge, did not become available until 1836 in England. (Radin, Anglo-American Legal History, p. 230.) The emphasis during this period of the English law was on the right to counsel and, apparently because self-representation was so commonplace, the courts were not called upon to make pronouncements as to whether the right was fundamental.

---

[3] "[I]n matters of fact upon your trial, the court are of counsel for you." (10 Howell's State Trials, Trial of Thomas Rosewell (1684) 147, 151; see also, 1 Pollock & Maitland, History of English Law, p. 211.)

In American colonial times self-representation was also commonplace. The early declarations of rights in this area were principally concerned with the right to counsel, and did not deal directly with the right of self-representation. Perhaps the pronouncement most nearly declaring a right of self-representation is the following appearing in the Pennsylvania Frame of Government (1682): "That, in all courts all persons of all persuasions may freely appear in their own way, and according to their own manner, and there personally plead their own cause themselves; or, if unable, by their friends. . . ." (See 1 Schwartz, The Bill of Rights, p. 140.)

The Georgia Constitution of 1777, in declaring unauthorized persons who practiced law to be guilty of malpractice, indirectly dealt with the right of self-representation in the following language: "This is not intended to exclude any person from that inherent privilege of every freeman, the liberty to plead his own cause." (See 1 Schwartz, The Bill of Rights, p. 300.) There is language in other colonial declarations of rights which indicate that the concern was not so much the right of self-representation as it was the right not to be compelled to employ and pay counsel in defense of criminal charges. Chapter XXIII of the Concessions and Agreements of West New Jersey (1677) provided: ". . . and that no person or persons shall be compelled to fee any attorney or counciller to plead his cause, but that all persons have free liberty to plead his own cause, if he please: And that no person or persons imprisoned upon any account whatsoever within this Province, shall be obligated to pay any fees to the officer or officers of the said prison, either when committed or discharged."[4] (See 1 Schwartz, The Bill of Rights, p. 129.)

We are able to discern from our examination of the early declarations only vague notions of a fundamental right of self-representation which predated the federal Constitution. We now examine the federal Constitution in an effort to determine whether it guarantees such a right.

The Sixth Amendment of the United States Constitution provides that an accused in a criminal prosecution "shall enjoy the right . . . to have the Assistance of Counsel for his defence." In addition to this specific provision, the right to representation by counsel is often held to be compelled on due process grounds and a trial where an accused cannot effectively defend for lack of assistance of competent counsel is fundamentally

---

[4]The Massachusetts Body of Liberties (1641) similarly provided: "Every man that findeth himselfe unfit to plead his owne cause in any Court shall have Libertie to imploy any man against whom the Court doth not except, to helpe him, Provided he give him noe fee or reward for his paines. This shall not exempt the partie him selfe from Answering such Questions in person as the Court shall thinke meete to demand of him." (See 1 Schwartz, The Bill of Rights, p. 74.)

unfair. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335, 344 [9 L.Ed.2d 799, 805, 83 S.Ct. 792, 93 A.L.R.2d 733]; *Powell* v. *Alabama* (1932) 287 U.S. 45, 68-69 [77 L.Ed. 158, 170-171, 53 S.Ct. 55, 84 A.L.R. 527].)

■ It is apparent, of course, that constitutional language granting the right to the assistance of counsel lends no express support to a claim that an accused has the constitutional right to defend without counsel. Nor can due process requirements, in the sense that what justice seeks to achieve is a fair trial, be construed as demanding that an accused be entitled to defend without counsel merely because he is of a mind to do so. This is not to say that the right to counsel, like other constitutional rights, may not be waived in a proper case. Moreover, the Sixth Amendment guarantees only "assistance," and does not expressly purport to "force a lawyer upon a defendant." (*Adams* v. *United States* (1942) 317 U.S. 269, 279 [87 L.Ed. 268, 274, 63 S.Ct. 236, 143 A.L.R. 435].) ■ Nevertheless, the right to waive a constitutional protection is not itself necessarily a right of constitutional dimensions. (*Singer* v. *United States* (1965) 380 U.S. 24 [13 L.Ed.2d 630, 85 S.Ct. 783].) In *Singer* the court had before it the validity of rule 23(a) of the Federal Rules of Criminal Procedure, conditioning the waiver of a jury upon the consent of the government and the court. In response to the argument that the Sixth Amendment's right to a jury trial conferred also a correlative constitutional right to waive a jury, the court stated, "The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right. ... . [W]e find it difficult to understand how the petitioner can submit the bald proposition that to compel a defendant in a criminal action to undergo a jury trial against his will is contrary to his right to a fair trial or to due process." (380 U.S. at pp. 34-36 [13 L.Ed.2d at p. 638].)

Although the court in *Singer* did not address itself to the right to counsel, no sufficient reason appears why the waiver of that Sixth Amendment right is a constitutional right when the waiver of the Sixth Amendment's right to a jury trial is not. In either event, a refusal for good cause to give effect to a waiver accords to the accused the very thing the Constitution expressly guarantees him.

The Supreme Court has never ruled directly upon the issue of a claimed constitutional right to appear pro se. Accuseds' rights in federal courts to "plead and conduct their own cases personally or by counsel" are expressly conferred only by statute.[5] Consistent with the statutory provisions

---

[5]"In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." (28 U.S.C. § 1654; see also The Judiciary Act of 1789.)

the court has recognized a right to waive counsel, but it has imposed conditions on such right of waiver which appear to give it less stature than the "Constitutional right" which is being waived.[6]

The court has also stated, in a case often relied upon in support of a claimed constitutional right to appear pro se, that "Neither the historic conception of Due Process nor the vitality it derives from progressive standards of justice denies a person the right to defend himself or to confess guilt. Under appropriate circumstances the Constitution requires that counsel be tendered; it does not require that under all circumstances counsel be forced upon a defendant." (*Carter* v. *Illinois* (1946) 329 U.S. 173, 174 [91 L.Ed. 172, 174, 67 S.Ct. 216].) Consistent with the express language of the Constitution itself, *Carter* recognizes that counsel may not be forced upon a defendant in "all circumstances"; alternately it must be deemed to recognize that there are circumstances when a defendant must be represented. The holding of *Carter* is that the record failed to disclose that the accused could not and did not effectively waive counsel. We perceive in neither the language nor the holding support for the proposition that the right to defend pro se is constitutionally compelled. "All that has really been said by the Supreme Court [in *Carter*] is that the Sixth Amendment does not *prohibit* the right of self-representation." (*United States* v. *Davis* (E.D. Tenn. 1966) 260 F.Supp. 1009, 1019.)

The federal Courts of Appeal are divided on the foregoing proposition. The leading case holding that there is a constitutional right to appear pro se is *United States* v. *Plattner* (2d Cir. 1964) 330 F.2d 271. The court there relied upon dictum in *Adams* (*supra,* fn. 3) to conclude that the Sixth Amendment "was surely not intended to limit in any way the absolute and primary right to conduct one's own defense *in propria persona.*" (330 F.2d at p. 274.) Giving at least passing support to *Plattner* are *Lowe* v. *United States* (7th Cir. 1969) 418 F.2d 100, 103; *United States* v. *Sternman* (6th Cir. 1969) 415 F.2d 1165, 1169-1170; and *Arnold* v. *United States* (9th Cir. 1969) 414 F.2d 1056, 1058. It is to be noted, however, that at least some of those courts which hold that the right to defend pro se is constitutionally compelled do not accord to such right the same force and vitality as the constitutional right to counsel, for they also place conditions on the right to waive (see *United States* v. *Plattner, supra,* 330 F.2d 271,

---

[6]In dictum in *Adams* v. *United States, supra,* 317 U.S. 269, the court stated: "The right to [the] assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. . . . [T]he Constitution does not force a lawyer upon a defendant.

"He may waive his *Constitutional right* to [the] assistance of counsel if he knows what he is doing and his choice is made with eyes open." (317 U.S. at p. 279 [87 L.Ed. at pp. 274-275]; italics added.)

276), and are willing to hold that the denial of the pro se right is not reversible error when no prejudice is shown (see *United States* v. *Abbamonte* (2d Cir. 1965) 348 F.2d 700, 704). Moreover, the federal Courts of Appeal of the Eighth, Tenth and District of Columbia Circuits recognize that the pro se right is not constitutionally compelled.[7]

In almost 200 years of constitutional interpretation and construction the Supreme Court has not on any occasion held that the right of self-representation in a criminal trial is constitutionally compelled. (See Comment, *Self-Representation in Criminal Trials: The Dilemma of the Pro Se Defendant,* 59 Cal.L.Rev. 1479, 1487.) Although it is recognized that the Constitution must be read to give it currently relevant meaning in a developing society, there is no express language in any of its provisions which reasonably supports a right of pro se representation. Moreover, as will be seen in the following discussion of California constitutional requirements, social and judicial changes which have taken place during the almost 200 years require greater rather than lesser limitations on the right of self-representation. We conclude that there is no express federal constitutional compulsion to accord an accused the right of self-representation in criminal trials.

Provision is made in but four state constitutions for an accused to appear and defend in person *or* by counsel. (W. Beaney, The Right to Counsel In American Courts (1955) p. 273.) In California it is provided that "In criminal prosecutions, in any court whatever, the party accused shall have the right . . . to appear and defend, in person and with counsel. . . ." (Const., art. I, § 13, cl. 3.) Read literally, the accused is afforded two rights—one to "appear" and the other to "defend." Each right may be exercised "in person and with counsel." Thus he is granted the right to appear "in person and with counsel," and the right to defend "in person and with counsel." By no rational reading of the constitutional provision can we ascertain an intent that an accused is to be afforded the right to personally appear and defend, or, in the alternative, to appear and defend with counsel. To so interpret the language we would be required to read the phrase "in person and with counsel" as "in person or with counsel." (Cf. *People* v. *Anderson* (1972) 6 Cal.3d 628, 636-638 [100 Cal.Rptr. 152, 493 P.2d 880].) Only by such a misreading of the constitutional

---

[7]"We find nothing in the Constitution which confers [the right to proceed pro se], or from which a guaranty of such right may be inferred. The truth is that the right [in the federal court] is statutory in character, and does not rise to the dignity of one conferred and guaranteed by the Constitution." (*Brown* v. *United States* (1959) 264 F.2d 363, 365 [105 App.D.C. 77]; see also *Van Nattan* v. *United States* (10th Cir. 1966) 357 F.2d 161, 163-164; cf. *Butler* v. *United States* (8th Cir. 1963) 317 F.2d 249, 258 [6 A.L.R.3d 582].)

provision could we conclude that a right of self-representation is constitutionally founded in this state.

The only reported case which has undertaken to give meaning to the foregoing language of the California Constitution appears to be *People* v. *Zammora* (1944) 66 Cal.App.2d 166 [152 P.2d 180]. In that case multiple defendants were represented by multiple counsel. The physical facilities in the courtroom made it impossible for each defendant to appear with his attorney at the counsel table during trial. Proper objections were made and denied in the trial court. The appellate court reversed judgments of conviction. As the defendants were deprived of the right to consult with counsel during trial, they were also denied the right to appear and defend in person and "with" the aid of counsel. The appellate court held that the defendants had the right to appear and defend in person "and" with counsel. It expressly rejected a construction which would have satisfied the constitutional mandate if an accused were accorded a disjunctive right to appear and defend in person "or" with counsel. (66 Cal.App.2d at pp. 236-237.)

Without any attempt to analyze or ascertain the true meaning of the constitutional language, courts in other cases have misinterpreted or taken portions of the critical language out of context and purported to have given meaning to such excerpts. Thus in *People* v. *Marcus* (1955) 133 Cal.App.2d 579 [284 P.2d 848], the court stated, "It is true that a defendant has the right 'to defend in person.' (Cal.Const., art. I, § 13; Pen Code, § 686). . . ."[8] (133 Cal.App.2d at p. 583.) The court, by seizing on an excerpt out of context, misstated both the Constitution and the statutory language, and implied a separate right to defend pro se which cannot be implied from the constitutional language. In *People* v. *Looney* (1935) 9 Cal.App.2d 335 [49 P.2d 889], the court stated, without the citation of authority, that "A defendant has a constitutional right to appear and defend in person." (9 Cal.App.2d at p. 338.) *Looney* has been cited as authority for the proposition which is derived, apparently, from an incomplete and misleading extract from article I, section 13. (See *People* v. *White* (1953) 115 Cal.App.2d 828, 830 [253 P.2d 108]; *People* v. *Ansite*, 110 Cal.App.2d 38, 39 [241 P.2d 1036].)[9]

The earliest decision of this court which is cited for the proposition that

---

[8]Penal Code section 686 then provided: "In a criminal action the defendant is entitled: . . . 2. [t]o be allowed counsel as in civil actions, or to appear and defend in person and with counsel."

[9]Both *Marcus* and *Looney* not only ignore the phrase "and with counsel" following "in person" in the constitutional language, but also ignore the comma which precedes the whole phrase "in person and with counsel."

by "constitutional provision and statute an accused is guaranteed the right to be represented by counsel or to represent himself" (*People* v. *Jackson* (1960) 186 Cal.App.2d 307, 315 [8 Cal.Rptr. 849]), is *People* v. *Mattson* (1959) 51 Cal.2d 777 [336 P.2d 937]. *Mattson,* however, correctly quotes the constitutional language and notes various code sections which, the court states, implement the constitutional language. (Pen. Code, §§ 686, 858, 859, 987.) It then states that the foregoing "sections" accord to the accused "not only a right to counsel but also a right to represent himself if he so elects. Except in certain situations not here pertinent, the court cannot force a competent defendant to be represented by an attorney." (51 Cal.2d at pp. 788-789.) The holding in *Mattson,* as pertinent to the instant inquiry, is only that an accused is not entitled to have his case presented in court by both himself and counsel acting at the same time. *Mattson* does not expressly hold that an accused has a constitutional right to defend pro se, although it has been cited for such proposition. (See *People* v. *Carter* (1967) 66 Cal.2d 666, 672 [58 Cal.Rptr. 614, 427 P.2d 214].) *Carter* likewise does not hold to such proposition, and merely cites *Mattson* in support of a statement which is clearly dictum.[10] In no instance where the question was at issue has this court held that there is a constitutional right to defend pro se.

In view of the foregoing we are persuaded to the conclusion that neither the federal nor the California Constitution makes specific provision for self-representation as a constitutionally protected right in criminal trials. This does not necessarily end our inquiry, however. Aside from any specific provision, as we have earlier indicated, due process considerations may require that a defendant be accorded the right of self-representation.

It is clear that the assurance of a fair trial is constitutionally founded in due process. When there has been a denial of a fair trial, the deprivation is of such a fundamental nature that any conviction flowing therefrom must be set aside. Illustrative of the deprivations within this category are the denial of counsel at trial, although also otherwise constitutionally proscribed (see *Gideon* v. *Wainwright, supra,* 372 U.S. 335, 344) and the erroneous receipt in evidence of an unlawfully obtained confession (see *People* v. *Dorado* (1965) 62 Cal.2d 338, 356-357 [42 Cal.Rptr. 169, 398 P.2d 361]). Denials of other rights which are not fundamental to a fair trial, even though such rights may be constitutionally compelled on due process grounds, require a further inquiry to

---

[10]Also cited in *Carter* in support of the statement that an accused has a constitutional right to represent himself, is *People* v. *Harmon* (1960) 54 Cal.2d 9 [4 Cal.Rptr. 161, 351 P.2d 329]. *Harmon,* however, merely quotes from *Mattson* relative to the right of a competent defendant to represent himself.

ascertain the prejudice resulting therefrom before a conviction must be set aside. In this category are the denial of the assistance of counsel at investigative proceedings (see *People* v. *Feggans* (1967) 67 Cal.2d 444, 448-449 [62 Cal.Rptr. 419, 432 P.2d 21]; cf. *People* v. *Caruso* (1968) 68 Cal.2d 183, 188-189 [65 Cal.Rptr. 336, 436 P.2d 336])[11] and the improper receipt of evidence not constituting a confession (see *People* v. *Parham* (1963) 60 Cal.2d 378, 385-386 [33 Cal.Rptr. 497, 384 P.2d 1001]). For reasons hereafter stated we cannot perceive that, except in very rare circumstances, even an erroneous denial of the right of self-representation would impair the fairness of a trial. ■ Thus, without a showing of prejudice, a denial of that right should not compel the reversal of a conviction.

■ An unfair trial cannot result, as we have already stated, merely because an accused, who is of a mind to represent himself, is denied that right. The fairness of a trial is not to be predicated on any purported right of an accused to proceedings which are planned, directed or conducted by him, but rather on proceedings which will accord him the fullest opportunity to preserve all trial rights and successfully defend against the charges. Moreover, if an accused has been accorded a fair trial, subtle analyses which pretend to establish that he might have been better defended had different counsel or tactics been employed, cannot require by hindsight a conclusion that the trial was not, in fact, fair. When the commands of today's requirement of the right to counsel are obeyed, an accused who is not permitted to represent himself is nevertheless accorded the basic, constitutionally compelled requirements of due process. Therefore, we cannot confer upon the right of self-representation, a right for which neither the federal nor state Constitution makes provision, a status which is automatically fundamental to a fair trial.

■ We are further compelled to the conclusion that aside from fair trial considerations the right of self-representation should not be deemed for the first time an element of the broader concept of due process of law, except in those rare instances where the denial may truly offend the concept of ordered liberty. ■ Constitutional provisions relating to representation at criminal trials, whether specific or embodied in due process, are designed for the purpose of affording to an accused the opportunity *to best defend against the charges* and to counter the resources aligned against him by the state. Ideally this opportunity is to be realized through

---

[11] As both *Feggans* and *Caruso* predated the effective date of *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], the question of constitutional denial because of lineup irregularities turned on due process considerations alone.

the availability of competent counsel, as constitutionally required. When, in years past, such counsel was unavailable there may have existed a need for enlarged rights of self-representation if an accused was to be represented at all. Conversely, since the right to competent counsel now has generally become available and the quality of counsel's performance is subject to checks and supervision, there do not exist the same fundamental reasons for enlarging the areas of self-representation.

Although constitutionally provided for, representation at trial, except for those who could afford it, was often a hollow right prior to *Powell* v. *Alabama, supra,* 287 U.S. 45. The right of representation has now become fully implemented (*Gideon* v. *Wainwright, supra,* 372 U.S. 335) and this court has undertaken to assure that the quality of representation at the trial level will not fall below standards which would effectively deny constitutional guarantees. (*People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].) An accused who cannot afford counsel is no longer required to choose between self-representation or the appointment of a general practitioner who often felt, because of a crowded schedule or the lack of adequate compensation, that he could not afford the time to prepare an adequate defense. In the four decades since *Powell,* competent counsel has become available to all persons accused of crime, and there is no longer the same threat of an injustice which formerly compelled an accused to risk self-representation. Although social and other changes are often urged as a proper reason for giving to a constitutional provision a broadened construction which would account for such changes (see *People* v. *Anderson, supra,* 6 Cal.3d 628, 647), we are not made aware of any such changes which persuade us for the first time to conclude that the right of self-representation is constitutionally compelled. To the contrary, the only significant changes of which we are aware in our evolving society would tend to restrict rather than enlarge a right of self-representation not heretofore deemed to be constitutionally compelled.

We do not purport to hold herein that an accused is not entitled to represent himself in a proper case, but only that such a right is not a constitutionally protected one. We have heretofore set forth standards by which a trial court may determine the competency of an accused who wishes to represent himself as a condition for granting such a motion (see *People* v. *Floyd* (1970) 1 Cal.3d 694, 702-703 [83 Cal.Rptr. 608, 464 P.2d 64] and cases cited there), and we do not now depart therefrom. However, in reviewing an exercise of a court's discretion in denying a motion to defend pro se, we will not regard the error, if any, as one of constitutional dimensions. This conclusion will relieve, in large part, the

dilemma faced by a trial court when called upon to pass on a motion for the claimed constitutional right of self-representation under circumstances where, to grant it, might well infringe upon the accused's constitutional right to be represented by counsel.[12]

In the instant case the trial court might have concluded that defendant met standards which entitled him to represent himself. He was 48 years of age, had an eleventh-grade education, appeared to be articulate, claimed to have read law books, was aware of the charges against him, and claimed to know of the available pleas and defenses, and the punishment which might be imposed. (See *In re James* (1952) 38 Cal.2d 302, 313 [240 P.2d 596].) He indicated a desire to waive a jury, to make a pretrial challenge to the receipt of certain evidence, and purported to establish his ability to make an opening statement and to cross-examine witnesses. However, the showing made by defendant was not compelling, even if considered persuasive. Moreover, such assertions of competency of defendant must be considered in conjunction with his demeanor in court. (See *People* v. *Glaser* (1968) 265 Cal.App.2d 849, 853, fn. 2 [71 Cal.Rptr. 706].) Although such demeanor cannot be ascertained from a reading of the record of proceedings up to the time of the denial of the motion, it thereafter became apparent from defendant's conduct during the course of the trial, and we may properly consider such conduct on appeal. (*People* v. *Floyd, supra,* 1 Cal.3d 694, 703-704.) Without reciting the events which lend support to the court's denial of the motion, we need note only that at the close of the trial the court commended trial counsel on a job well done and stated, "you probably would have won it but for your client. I cannot put any credence in anything he has said in this court room. I just find it unbelievable."

 The court did not abuse its discretion in denying the motion to defend pro se, but even assuming such an abuse we find that such an error clearly could not have resulted in a miscarriage of justice. On a review of the entire record, it does not appear reasonably probable that a result

---

[12]"The dilemma in which trial courts find themselves because of the requirement . . . is apparent. Cunning criminals consistently take advantage of it and all too often the demand for self-representation becomes a 'heads I win tails you lose' proposition. If the trial court too readily accedes to it an appellate court will find the waiver of the right to counsel to be ineffectual. Conversely, if the court leans over backwards in protecting the latter right, it runs the risk of depriving defendant of the former." (*People* v. *Addison* (1967) 256 Cal.App.2d 18, 23, 24 [63 Cal.Rptr. 626].)

more favorable to defendant would have been reached had he represented himself. (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].)

The judgment is affirmed.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

## APPENDIX

Article I, section 13, of the Constitution was amended by the adoption of Proposition 3 at the primary election of June 6, 1972, to take effect June 7, 1972. (Const., art. XVIII, §§ 1, 4.) The amendment was proposed by Senate Constitutional Amendment No. 42, 1971 Regular Session. As amended section 13 now provides in pertinent part: "In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and a public trial *and to have the assistance of counsel for his defense*; to have the process of the court, to compel the attendance of witnesses in his behalf; and to appear and defend in person and *to be personally present with counsel. . . . The Legislature shall have power to require the defendant in a felony case to have the assistance of counsel. . . .*" (Provisions deleted from section 13 as it appeared at the times here involved and prior to the amendment are printed in strikeout type; inserted or added provisions are *italicized*.)

In accordance with and in anticipation of the newly adopted constitutional amendment, the Legislature modified Penal Code sections 686, 859 and 987 and added Penal Code section 686.1 to become operative only on the adoption of the constitutional amendment. Section 686, as amended, provides in subdivision 2 that in a "capital case [cf. *People* v. *Anderson, supra,* 6 Cal.3d 628, 657, fn. 45] he shall be represented [in court] by counsel at all stages of the preliminary and trial proceedings." Section 686.1, as added, provides that a "defendant in a capital case shall be represented in court by counsel at all stages of the preliminary and trial proceedings." Section 859, as amended, provides inter alia that in a "capital case" the court must inform the accused that he "must be represented in court by counsel at all stages of the preliminary and trial proceedings." Section 987, as amended, provides inter alia that in a "capital case" the court must assign counsel to either an accused who is unable to employ counsel or an accused who refuses to employ and appears without counsel. The Legislature also expressly found that "persons representing themselves cause unnecessary delays in the trials of charges against them; that trials are extended by such persons representing themselves; and that orderly trial procedures are disrupted. Self-representation places a heavy burden upon the administration of criminal justice without any advantages accruing to those persons who desire to represent themselves." (Stats. 1971, ch. 1800.)

It thus appears that, beginning with the effective date of the constitutional amendment, there is no longer arguable basis for a claim of a state constitutional right to appear pro se, and that the Legislature now expressly requires that a defendant be represented in those cases which it designated as capital cases at the time it enacted or modified the foregoing provisions of the Penal Code. (See *People* v. *Anderson, supra,* 6 Cal.3d 628, 657, fn. 45.) Although the general statutory language for noncapital cases retains language similar to that of the Constitution before amendment

("to appear and defend in person and with counsel" (§ 686, subd. 2)), we herein now construe such language as not conferring a right of self-representation.

Proceedings in the instant case were all had before the effective date of the constitutional amendment and legislative enactment and, as we affirm the judgment, there will in this case be no further trial proceedings as to which the new provisions would be applicable.